IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| HEATHER McCARROLL<br>7 Woodbryn Drive<br>Mountaintop, PA 18707 | :<br>:<br>:<br>: | CIVIL ACTION<br><br>NO.: 3:24-cv-00522-MEM |
| Plaintiff, | :<br>: | |
| v. | :<br>: | |
| WESTGUARD INSURANCE COMPANY<br>P.O. Box 31, 16 S. River Road<br>Wilkes-Barre, PA 18702 | :<br>:<br>:<br>: | **JURY TRIAL DEMANDED** |
| Defendant. | :<br>: | |

_____

# FIRST AMENDED COMPLAINT

Heather McCarroll (hereinafter referred to as "Plaintiff," unless indicated otherwise) by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.  Plaintiff has initiated this action to redress violations by WestGuard Insurance Company ("Defendant") of the Americans with Disabilities Act, as amended ("ADA" - 42 U.S.C. §§ 12101 *et. seq.*), and the Pennsylvania Human Relations Act ("PHRA"). As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. There lies supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3. This Court may properly assert personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it are subjected to personal jurisdiction, rendering Defendant a resident of the Middle District of Pennsylvania.

5. Plaintiff is proceeding herein under the ADA after properly exhausting all administrative remedies with respect to such claims by timely filing Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC")

and by filing the instant lawsuit within ninety ("90") days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

6. Plaintiff is further proceeding (in part) under the PHRA after properly exhausting all administrative remedies with respect to such claims by timely filing a Charge of Discrimination with Pennsylvania Human Relations Commission ("PHRC") and waiting one (1) year before initiating a lawsuit from said filing date.

## PARTIES

7. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

8. Plaintiff is an adult individual with an address as set forth in the above caption.

9. WestGuard Insurance Company is a holding company that specializes in insurance and reinsurance coverage and is based out of Pennsylvania at the above-captioned address. WestGuard Insurance Company was listed as Plaintiff's employer on his W-2 form.

10. At all relevant times herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendant.

## FACTUAL BACKGROUND

11. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

12. Plaintiff was hired by Defendant on or about October 19, 2020, as a Property Claims Adjuster.

13. At all times relevant herein, Plaintiff reported to Manager, Mik Lis ("Lis").

14. During her employment with Defendant, Plaintiff was a dedicated and hard-working employee who performed her job duties admirably and was not subject to any form of performance-based corrective action until the very end of her employment (discussed further *infra*).

15. Plaintiff has and continues to suffer from ADA and PHRA-qualifying health conditions, including but not limited to alcohol dependency and diabetes (discussed further *infra*), and other related complications.

16. These disabilities affect Plaintiff's ability to concentrate, properly regulate her blood sugar levels, properly regulate her digestive system, and work (at times).

17. Despite Plaintiff's aforesaid serious health conditions, she was able to perform her job duties well, however, she (at times) required some reasonable medical accommodations.

18.    By way of example, Plaintiff advised Defendant's management, including Lis, on multiple occasions that she suffers from a history of alcohol dependency and requested she not participate in any work-related function where alcohol was present.

19.    Additionally, in or about January 2023, Plaintiff requested from Defendant's management a brief medical leave of absence in order to take time off from work to receive diagnostic medical testing to treat recent cognitive issues and brain fog that had developed.

20.    Subsequently, on or about February 1, 2023, Plaintiff was diagnosed with Type II Diabetes and advised by her treating physicians that she needed to have further treatment and evaluations done due to the severe nature of her diagnosis and due to the fact they believed she imminently would have suffered from a stroke had she not received treatment.

21.    Plaintiff immediately advised Lis and Defendant's Human Resources ("HR") Department of her diagnosis and prescribed treatment regimen, which included the need for doctor's visits and changes to her prescription dosages whiles she adjusted to her new medication.

22.    As a result of her expected difficulties adjusting to her new diabetic medications, Plaintiff requested the ability to work remotely from home.

23. At the time of Plaintiff's accommodation request to work from home, Plaintiff was already working a hybrid model, wherein she worked three days from home and only two days in the office, making her request entirely reasonable for Defendant to accommodate.

24. In support of her reasonable accommodation request, Plaintiff provided Defendant with a doctor's note recommending she work from home full-time while she was receiving treatment and recovering from her new prescribed medications.

25. Instead of initially granting Plaintiff's accommodation request, Defendant harassed Plaintiff and treated her in disparate fashion compared to other non-disabled employees and compared to how she was treated prior to her request for accommodations.

26. By way of example but not intended to be an exhaustive list, Defendant treated Plaintiff in a rude and condescending manner, immediately began questioning her performance, asked her embarrassing questions about her medical conditions and treatment, and issued her corrective action in the form of a 30-day probation allegedly for performance-based reasons.

27. This was the first and only time Plaintiff was ever issued any form of corrective action.

28. Moreover, rather than issue Plaintiff a lesser form of corrective action, such as a verbal warning since Plaintiff demonstrated herself to be a proficient

employee, Defendant instead immediately threatened her employment with a 30-day probation.

29. Following unjustifiably placing Plaintiff on probation, Defendant further escalated its harassment against Plaintiff by taking away job assignments and assigning her less customer accounts to oversee.

30. On or about April 28, 2023, and only approximately two months after requesting the ability to work from home, Defendant abruptly terminated Plaintiff allegedly due to "low productivity."

31. This rationale is clearly pretextual as Defendant purposefully took away job assignments and accounts just prior to terminating Plaintiff.

32. Moreover, Defendant offered Plaintiff an unsolicited severance agreement if she agreed to waive any legal claims against Defendant.[1]

33. Plaintiff did not sign the agreement.

34. Plaintiff believes and therefore avers that she was terminated because of: (1) her known and/or perceived health problems; (2) her record of impairment;

---

[1] *See e.g., Staffieri v. Northwestern Human Servs.*, 2013 U.S. Dist. LEXIS 72115, at *25 (E.D. Pa. May 22, 2013) (employer's decision to offer Plaintiff severance on the condition he waive any FMLA claims, even though not a company policy, supported finding of pretext in FMLA claim, among other facts); *see also Karl v. City of Mountlake Terrace*, 2011 U.S. Dist. LEXIS 59085, at *13-14 (W.D. Wash. June 2, 2011) (severance agreements are admissible in retaliation claims when made contemporaneous to termination, as they are not governed by FRE 408); *Bartlett v. NIBCO Inc.*, 2011 U.S. Dist. LEXIS 28072, at *11 (N.D. Ind. March 18, 2011) ("Severance pay packages contingent upon a release of claims which are offered *contemporaneously with the notice of termination* are *not* covered by [Rule 408]," and the motive in offering same is admissible evidence in a retaliation claim and is admissible at trial in this case.) (citation omitted); *EEOC v. Republic Servs., Inc.*, 640 F. Supp. 2d 1267, 1300 (D. Nev. 2009) (denying summary judgment and considering as evidence in wrongful termination case that a company would offer severance when an employee is supposedly terminated in a manner that doesn't warrant severance per an explicit company policy).

(3) her requested accommodations (which constitutes illegal retaliation); and (4) Defendant's failure to properly accommodate her (set forth *supra*).

35. These actions constitute violations of the ADA and the PHRA.

### COUNT I
### Violations of the Americans with Disabilities Act, as Amended ("ADA")
### (1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; and [3] Failure to Accommodate)

36. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

37. Plaintiff suffered from qualifying health conditions under the ADA which affected her ability (at times) to perform some daily life activities.

38. Despite Plaintiff's aforementioned health conditions and limitations, she was still able to perform the duties of her job well with Defendant, however, Plaintiff did require reasonable medical accommodations at times.

39. Plaintiff kept Defendant informed of her serious medical conditions and need for medical treatment and other accommodations.

40. Plaintiff requested reasonable accommodations from Defendant, including but not limited to intermittent time off from work for medical appointments diagnostic treatment, and requested the ability to work from home, to care for and treat her disabilities.

41. Plaintiff was subjected to hostility and animosity due to her health conditions and/or requests for accommodations through demeaning, discriminatory,

and disparate treatment.

42. Plaintiff was terminated, on or about April 28, 2023, in close temporal proximity to requesting/utilizing accommodations for her health conditions.

43. Defendant failed to accommodate Plaintiff by failing to engage in any interactive process regarding her requested accommodation(s).

44. Plaintiff believes and therefore avers that (1) her known and/or perceived health problems; (2) her record of impairment; (3) her requested accommodations (which constitutes illegal retaliation); and (4) Defendant's failure to properly accommodate Plaintiff (set forth *supra*), were motivating/determinative factors in the termination of her employment with Defendant.

45. Defendant's actions as aforesaid constitute violations of the ADA.

### COUNT II
### Violations of the Pennsylvania Human Relations Act ("PHRA")
### (1) Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; and [3] Failure to Accommodate)

46. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

47. Plaintiff reasserts each and every allegation in Count I of this First Amended Complaint as the same constitute unlawful violations under the PHRA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to promulgate and adhere to a policy prohibiting discrimination in the future against any employee(s);

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C. Plaintiff is to be awarded liquidated and punitive damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation);

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

F. Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

        Respectfully submitted,

        **KARPF, KARPF & CERUTTI, P.C.**

      By: */s/ Andrew R. Olcese*
        Andrew R. Olcese, Esq.
        Samantha Pankey Martin, Esq.
        8 Interplex Drive
        Suite 210
        Feasterville-Trevose, PA 19053
        (215) 639-0801

Dated:  June 25, 2024